IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**RACHELLE LYNN RICHARDS,**

    **Plaintiff,**

v.                                                         Case No.: 2:14-cv-26508

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's brief requesting judgment on the pleadings, and the Commissioner's brief in support of her decision, requesting judgment in her favor. (ECF Nos. 10, 11).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT**

1

Plaintiff's request for a remand, (ECF No. 10); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 11); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g); and **DISMISS** this action from the docket of the Court.

## I. Procedural History

On January 31, 2011, Plaintiff Rachelle Lynn Richards ("Claimant"), filed applications for DIB and SSI, alleging a disability onset date of December 8, 2010, (Tr. at 228-31), due to "congestive heart failure." (Tr. at 260). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 71-80, 83-88). Claimant requested an administrative hearing, which was held on July 1, 2013 before the Honorable Jon K. Johnson, Administrative Law Judge. (Tr. at 27-56). By written decision dated July 11, 2013, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 10-20). The ALJ's decision became the final decision of the Commissioner on August 5, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5).

Claimant timely filed the present civil action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 8 & 9). Claimant then filed a Brief in Support of Claim, (ECF No. 10), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 11), to which Claimant filed a reply memorandum, (ECF No. 12). Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 32 years old at the time of her alleged disability onset, and 35 years

old on the date of the ALJ's decision. (Tr. at 32, 228). She is a high school graduate and communicates in English. (Tr. at 259-60). Claimant has previously worked as a cashier in a retail store, an in-home assistant, and a trainer for mentally impaired patients at a mental health facility. (Tr. at 261).

### III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the

3

measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

  Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2015. (Tr. at 12, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since December 8, 2010, the alleged onset date. (Tr. at 12, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "cardiomyopathy, stage I kidney disease, and obesity." (Tr. at 12-14, Finding No. 3). Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 14-15, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except work should be performed in an indoor environment that would permit extra brief bathroom breaks during the day and require no production line work.

(Tr. at 15-18, Finding No. 5). At the fourth step, the ALJ found that Claimant was unable to perform any past relevant work. (Tr. at 18, Finding No. 6). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in substantial gainful activity. (Tr. at 18-19, Finding Nos. 7-10). The ALJ considered that (1) Claimant was born in 1978, and was defined as a younger individual on the alleged disability onset date; (2) she had at least a high school education and could communicate in English; and (3) transferability of job skills was not material to the disability determination because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of her transferable job skills. (Tr. at 18, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform jobs that existed in significant numbers in the national economy, including work as a addresser, telephone clerk, and hand packer. (Tr. at 18-19, Finding No. 10). Therefore, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act, and was not entitled to benefits. (Tr. at 20, Finding No. 11).

## IV. Claimant's Challenges to the Commissioner's Decision

Claimant raises two challenges to the Commissioner's decision. First, she contends that the ALJ erred when he adopted an RFC finding that included Claimant's need for frequent bathroom breaks. According to Claimant, the act of allowing extra bathroom breaks is a workplace accommodation; thus, by including it as a limitation, the ALJ incorrectly incorporated a workplace accommodation into the RFC finding. Second,

5

Claimant argues that the ALJ compounded the RFC error when he presumed at step five of the sequential evaluation process that prospective employers would accommodate Claimant's need for extra bathroom breaks. Claimant emphasizes that the Commissioner is precluded by law from taking into account the possibility of a workplace accommodation when making a disability determination. (ECF No. 10 at 6-9) (citing *Cleveland v. Policy Management Systems,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999)).

In response, the Commissioner concedes that social security law and SSA policy prohibit the ALJ from considering whether "individual employers would accommodate an individual in determining the availability of jobs in making a step five determination." (ECF No. 11 at 7). Nevertheless, the Commissioner contends that allowing extra bathroom breaks is not a workplace accommodation under *Cleveland*; therefore, the ALJ did not err by including this limitation in the RFC finding. In addition, the Commissioner asserts that the ALJ did not presume an accommodation when he found jobs that Claimant was capable of performing. Instead, with the help of a vocational expert, the ALJ identified jobs that Claimant could perform regardless of her need to take extra bathroom breaks.

## V.     Relevant Medical Information

Neither party believes that the details of Claimant's medical history are especially relevant to the legal issues before the Court; particularly, as Claimant's need for extra bathroom breaks has been acknowledged by both parties. However, given that Claimant's frequent use of the bathroom is central to the dispute, the pertinent information is summarized as follows.

In January 2011, Claimant was admitted to Camden Clark Hospital with complaints of shortness of breath and a nagging cough. (Tr. at 332). A CT scan of her chest

revealed cardiomegaly[1] with some pericardial effusion[2] and possible symptoms of right ventricular failure. She was diagnosed with viral myocarditis/cardiomyopathy and was started on Lasix, a diuretic, as well as other medications. (*Id.*) Claimant was discharged in improved condition.

On March 22, 2011, Claimant was readmitted to Camden Clark Hospital and diagnosed with acute renal failure most likely due to extreme diuresis. (Tr. at 371). She was treated with intravenous fluids and medications. At discharge, she was instructed to follow up with a nephrologist and a cardiologist. (Tr. at 434-440). Claimant was continued on Lasix to treat fluid retention. She did not complain of excessive urination, although the records document a nearly eighty-pound weight loss that was likely related to fluid discharge. (Tr. at 434-440, 485).

On September 14, 2011, Claimant was examined by her cardiologist. (Tr. at 516-18). She had resumed fairly normal activities by then, but complained of reduced exercise tolerance. She was told that she could starting walking on a treadmill and could decrease her Lasix dose to 20 milligrams. (Tr. at 518). Her long term prognosis was good. On November 8, 2011, Claimant was evaluated by her nephrologist, who noted Claimant's overall condition to be improved. (Tr. at 509-10). Her kidney function was stable; her blood pressure was normal; and her congestive heart failure was well-compensated. She continued to take Lasix, 40 milligrams, once each day.

By February 10, 2012, Claimant showed no evidence of congestive heart failure. (Tr. at 537). She was increasing her exercise tolerance by walking on the treadmill and

---

[1] Cardiomegaly is an abnormal enlargement of the heart. *Dorland's Medical Dictionary for Health Consumers.* ©2007 by Saunders, an imprint of Elsevier, Inc.

[2] Pericardial effusion is the escape of blood and other fluid into the pericardial sac. *Mosby's Medical Dictionary*, 8th edition. © 2009, Elsevier

was performing household chores with some assistance. (Tr. at 535). Claimant continued to take 40 milligrams of Lasix each day, but made no documented complaints of urinary frequency. In November 2012, Claimant's nephrologist reduced her dose of Lasix to 20 milligrams daily; however, when Claimant's weight increased by twelve pounds in one week, her family physician recommended that Claimant resume taking 40 milligrams of Lasix every day. (Tr. at 593-94, 601). Claimant did not complain of urinary frequency on that visit. (Tr. at 600).

On February 8, 2013, Claimant saw her cardiologist in follow-up. (Tr. at 661-63). On this occasion, Claimant complained of frequent urination, stating that she had to use the restroom about "every hour." (Tr. at 661). She continued taking 40 milligrams of Lasix each day. (Tr. at 662). However, just six days later, on February 14, 2013, Claimant denied any bladder problems, urgency, or incontinence. (Tr. at 676). On July 1, 1013, Claimant's cardiologist wrote a note stating that Claimant needed to take Lasix every morning and take half a tablet in the evening when necessary. (Tr. at 680). At the administrative hearing held on the same day, Claimant testified that she needed to use the restroom "once every half hour usually," and "[s]ometimes more, depending on how much [fluid she was] retaining at that time." (Tr. at 36). According to Claimant, frequent urination, fatigue, and shortness of breath were the greatest obstacles to her ability to function normally. (*Id.*).

In follow-up to that testimony, Claimant's attorney questioned Dr. Judith Brendemeuhl, a medical expert present at the hearing, regarding the effects of Lasix on Claimant's need to use the bathroom. (Tr. at 45). Dr. Brendemeuhl explained that the frequency with which Claimant would need to urinate depended upon when she took Lasix and what she was doing at the time. Dr. Brendemuehl testified that if Claimant was

recumbent most of the day, she probably would not need to take a bathroom break until she sat or stood up. (*Id.*). If she had to take an extra dose of Lasix, then her need to use the bathroom would increase. Claimant's attorney asked Dr. Brendemuehl if Claimant's description of needing to use the bathroom every half hour was "possible." (*Id.*). Dr. Brendemuehl answered that it depended on when Claimant took the medication. On examination by the ALJ, Dr. Brendemuehl indicated that Lasix worked quickly, usually within thirty minutes. (Tr. at 53-54). She stated that the time of day it was to be taken generally depended upon the patient's activities. (Tr. at 54). Of significance, Dr. Brendemeuhl never actually pinpointed how many extra bathroom breaks she expected Claimant would need in view of her morning dose of Lasix. The ALJ gave great weight to Dr. Brendemeuhl's testimony, but he was equally imprecise about the number of extra breaks Claimant would require.

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589

9

(4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable regulations and rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. <u>Discussion</u>

In challenging the Commissioner's decision, Claimant's relies heavily on the United States Supreme Court's ruling in *Cleveland v. Policy Management Systems,* 526 U.S. 795 (1999). In *Cleveland,* the Supreme Court considered whether a plaintiff suing under the Americans with Disabilities Act of 1990 ("ADA") could, at the same time, maintain a claim for disability benefits under the Social Security Act; particularly, given the inherent conflict between the statutes. On the one hand, to qualify for disability benefits, a plaintiff must allege and demonstrate that she is unable to work, while on the other hand, to prove a claim under the ADA, the plaintiff must establish her ability to perform the essential elements of her job with reasonable accommodation. Noting a disagreement among the circuits "about the legal effect upon an ADA suit of the application for, or receipt of, disability benefits," the Supreme Court concluded that a claim could be prosecuted under both statutes simultaneously, because the SSA "does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for [Social Security benefits]." *Cleveland,* 526 U.S. at 800, 803 (citing Memorandum from Daniel L. Skoler, Comm'r for Hearings and Appeals, SSA to Administrative Appeals Judges, reprinted in 2 Social Security Practice Guide, App. § 15C[9], pp. 15-401 to 15-402 (1998) (emphasis in original)). Thus, "[t]he result is that an ADA suit claiming that the plaintiff can perform

10

her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Id.* at 803. (emphasis in original). Extrapolating from this decision, Claimant argues that the Commissioner may not take into account the possibility of workplace accommodations when determining whether an individual is disabled under the Social Security Act. The Commissioner does not disagree. Accordingly, the fundamental dispute between the parties is whether the act of allowing an employee extra bathroom breaks is, *ipso facto,* a workplace accommodation.

Claimant contends that her need for frequent bathroom breaks clearly requires accommodation on the part of any prospective employer. The Commissioner disagrees, pointing out that the vocational expert ("VE") was able to identify jobs that Claimant could perform despite her need for frequent bathroom breaks; in effect, that employers offering the jobs listed by the VE would tolerate extra bathrooms breaks in the normal course of business and would not consider them to be an "accommodation" under the ADA. The undersigned agrees, to a certain extent, with both Claimant and the Commissioner.

Reasonable accommodation under the ADA is a term of art referring to "changes in the work environment or in the way things are customarily done, which enable an individual with a disability to enjoy equal employment opportunities." *Harris v. Colvin,* No. 3:12CV2302, 2013 WL 4517866, at *3 (N.D. Ohio Aug. 21, 2013). At the administrative hearing, the vocational expert was asked if there were any jobs that could be performed by a hypothetical individual "such as the claimant" who was restricted to sedentary exertional level, unskilled jobs to be performed indoors and who had the following limitation:

11

> [T]hey're not going to be able to do production line or something with this limitation. The individual's got to be able to take extra brief bathroom breaks during the day when she will go several times a day more often than somebody's [*sic*] who's not taking Lasix. But they're going to be brief.[3]

(Tr. at 47). Taking into account these limitations, the VE was able to list jobs, including addresser, telephone clerk, and hand packer. (Tr. at 47-48). The VE never qualified her answer by stating that extra bathroom breaks would require employer accommodation. Likewise, she did not presume that employers would be willing to afford such an accommodation, or made the availability of jobs contingent upon an employer's willingness to allow extra bathroom breaks. Rather, the VE testified that in her experience, employers of addressers, telephone clerks, and hand packers typically tolerated an employee taking three five-minute bathroom breaks in the morning and three five-minute bathroom breaks in the afternoon in place of two standard fifteen-minute breaks. (Tr. at 49-51). The ALJ was entitled to rely on the VE's opinion, which was based upon her knowledge and experience. *See Loop v. Colvin,* No. 3:12-cv-01674-JE, 2014 WL 463265, at *7 (D. Or. Feb 4, 2014) (finding that the ALJ was permitted to accept a VE's testimony that a sit/stand option was not an accommodation, but rather, was an option virtually assured in the typical workplace); *Eaglebarger v. Astrue,* No. 1:11-CV-00038, 2012 WL 602022, at *6 (N.D. Ind. Feb. 23, 2012) (holding that the ALJ could rely upon the VE's testimony that certain allowances were generally accepted in the workplace); *and Titus v. Astrue,* No. 1:11CV1286, 2012 WL 3113165, at *13 (N.D. Ohio Jun. 12, 2012) (holding that the ALJ properly relied on the VE's opinion that the claimant could perform work, which allowed for a workplace modification that was not a formal

---

[3] The qualifier of "several times a day more often than somebody's who's not taking Lasix" was contained in the hypothetical question, but was not included in the RFC finding, and the ALJ did not explain the evidentiary basis for the qualifier.

12

accommodation). Consequently, if the act of allowing extra bathroom breaks does not constitute an "accommodation" in every work setting, it follows that including extra bathroom breaks in the RFC finding was not an erroneous incorporation of a workplace accommodation. *See Harris,* 2013 WL 4517866, at *4.

Nevertheless, the ALJ did err at step five of the disability process, because he failed to sufficiently quantify what he meant by "extra brief bathroom breaks" in the RFC finding. (Tr. at 15). The VE explained that when she listed available jobs in response to the ALJ's hypothetical question, she assumed that the hypothetical employee took three five-minute breaks in the morning and three five-minute breaks in the afternoon, instead of taking the two 15-minutes breaks generally given to employees. This assumption was never explicitly confirmed by the ALJ as being an accurate representation of Claimant's RFC. The VE then clarified that an employer's tolerance of extra bathroom breaks varied depending upon the type of job and the length and frequency of the breaks, stating that employers would tolerate employees taking extra breaks if "they didn't take their 15-minute morning break and just had three, you know, during the morning, three in the afternoon and they were about five minutes each. Well at least with the jobs I've listed." (Tr. at 50). The VE continued, explaining the difference between the jobs she listed and other jobs that would not allow for extra breaks, stating:

> Well for example a cashier at a grocery store. [Extra breaks] would not be tolerated at all. You would be on your post, that's the way it would be. And there would be many jobs like that that you're assigned to a certain job to do until your morning break and then someone else would take your place and they wouldn't allow [extra breaks].

(Tr. at 50-51). The VE reiterated that with the jobs she listed, six five-minute bathroom breaks in place of two 15-minute breaks would be acceptable, and the need for the five-minute breaks would not reduce the number of addresser, telephone clerk, or hand packer

13

jobs available to Claimant. However, in contrast, when asked if employers would tolerate a hypothetical employee who "needed the 15-minute break and additional bathroom breaks," the VE answered in the negative, indicating that with those additional needs, she "would not list jobs." (Tr. at 52). Furthermore, Claimant's counsel and the VE had the following exchange:

Counsel: And if we're looking at the number of bathroom breaks exceeding 15 minutes in the morning and 15 minutes in the afternoon, does that affect the jobs? Meaning let's say they needed an additional break, they needed four bathroom breaks in the morning. And that became more than just once a week. Does that affect their job?"

VE: If I am understanding you correctly, I would not be able to list jobs if that were the case as well.

(Tr. at 52-53). As the VE's testimony clearly demonstrates, at some point, an employee's need for extra bathroom breaks transforms from being a condition largely tolerated in the ordinary course of certain occupations to being a condition that necessitates a workplace accommodation. *See, e.g., Estela-Rivera v. Colvin*, No. 13 CV 5060 PKC, 2015 WL 5008250, at *20 (E.D.N.Y. Aug. 20, 2015) (referencing the VE's testimony that "employers would not tolerate more than three standard breaks and occasional bathroom breaks in a work day, except by accommodation"); *and Wood v. Colvin,* No. 1:14–CV–00998, 2015 WL 3442112, at *9 (N.D. Ohio May 28, 2015) (citing to VE testimony that "an employee who requires 'eight to ten additional bathroom breaks, with whatever time that would require' would need a special accommodation from an employer"). Accordingly, the number of breaks required by Claimant plays a significant role in determining whether she is disabled under the Social Security Act.

Unfortunately, the evidence concerning the frequency with which Claimant used the bathroom was contradictory and inconsistent, and the ALJ never resolved the

14

question by establishing a definitive number. Claimant testified at the administrative hearing that she required a bathroom break every thirty minutes. If accurate, then Claimant would need as many as six morning bathroom breaks and eight afternoon bathroom breaks, which would exceed the "tolerable" limit testified to by the VE. Other evidence in the record indicated that Claimant used the bathroom every hour, and still other evidence suggested that she had **no** issues with urinary frequency. The ALJ attempted to quantify the number of breaks by stating in his hypothetical question that Claimant would need to use the bathroom "several times a day more often than somebody's [*sic*] who's not taking Lasix." (Tr. at 47). Notwithstanding this qualifier, subsequent statements by Claimant's counsel, Dr. Brendemeuhl, and the VE indicate that the ALJ's description did not resolve the confusion. Moreover, whether Claimant would need regular breaks in addition to short bathroom breaks was never directly addressed. When the issue was explicitly raised at the hearing by Claimant's counsel, the ALJ declined to clarify what he meant by "extra brief bathroom breaks" in the RFC finding. (Tr. at 49). Furthermore, a review of the written decision reflects that while the ALJ noted some of the evidentiary discrepancies on this issue, he never actually resolved them. At the hearing, Claimant's counsel attempted to settle the matter by obtaining a precise number from Dr. Brendemeuhl, but she could offer only conjectures, which were contingent on other factors. (Tr. at 45).

In summary, the ALJ erred by failing to offer the VE a hypothetical question that contained all of the pertinent facts crucial to an accurate response. In order for a VE's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). By failing to specify the

15

frequency and length of extra breaks required by Claimant as a consequence of her Lasix prescription, the ALJ undermined the reliability of the VE's opinion regarding the jobs available to Claimant. Therefore, the ALJ's finding that Claimant could perform the jobs identified by the VE was not supported by substantial evidence, and this case should be remanded for further proceedings to clarify and resolve that issue.[4]

## VIII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for a remand, (ECF No. 10); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 11); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of

---

[4] The ALJ should also consider on remand whether Claimant is entitled to a closed period of disability in view of her counsel's comments that Claimant's condition was expected to show continued improvement.

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** October 7, 2015

_____
Cheryl A. Eifert
United States Magistrate Judge